MARCUS M. HENRY,

        Plaintiff,

    v.                                   Case No. 22-C-1394

ALLISON HOHENSTERN, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Marcus Henry, who is representing himself, is proceeding on an Eighth Amendment deliberate indifference claim in connection with allegations that Defendant Allison Pach (formerly Allison Hohenstern) denied him insulin on June 15, 2022 and June 16, 2022; and Defendant Jessica Hosfelt denied him insulin on August 5, 2022, September 14, 2022, and September 30, 2022. Dkt. Nos. 1, 14, & 60. On February 28, 2024, Defendants filed a motion for summary judgment. Dkt. No. 70. Because the undisputed evidence shows that Defendants were not deliberately indifferent, and instead Plaintiff refused his medication, the Court will grant the motion and dismiss the case.

## UNDISPUTED FACTS

At the relevant time, Plaintiff was an inmate at the Waupun Correctional Institution, where Defendants Pach and Hosfelt were nurses. Dkt. No. 72, ¶¶1-3. Plaintiff has type 2 diabetes, which means his pancreas does not process insulin correctly, and his blood sugar levels can get too high or too low (hyper/hypoglycemia). *Id*., ¶¶7 & 26. Plaintiff has a prescription to receive one dose of long-lasting insulin ("insulin glargine") in the morning regardless of his blood sugar level. *Id*.,

¶9. He also has a prescription to receive up to three doses of short-acting insulin ("insulin regular") depending on blood sugar levels at mealtimes. *Id*., ¶10. Plaintiff also has a prescription for Metformin, which lowers blood sugar levels by improving the way the body handles insulin. *Id*., ¶14. The dispute in this case involves Defendants' alleged failure to give him insulin regular on June 15, June 16, August 5, September 14, and September 30.

On June 15, 2022, Plaintiff transferred from general population to the Restrictive Housing Unit (RHU). *Id*., ¶21. He arrived in the late afternoon, so his insulin kit was not yet ready, and he did not receive any insulin regular during the 3:00 p.m. medication pass. *Id*., ¶22. Later that afternoon, during the 5:00 p.m. hour, Plaintiff called the security bubble four times to complain of chest pain. *Id*., ¶24. Plaintiff kicked at the door and screamed at staff when his calls were not answered immediately. *Id*. Nurse Pach went to Plaintiff's cell, at about 5:45 p.m., to examine him. *Id*., ¶25. At that time, Plaintiff appeared normal and not in distress (apart from yelling, kicking, and screaming at staff). *Id*. Plaintiff did not ask for or otherwise mention his insulin regular during that interaction, nor would he have needed it because he had just eaten. *Id*., ¶¶22 & 25; *see also* Dkt. No. 73-1 at 1. Nurse Pach explains that Plaintiff did not exhibit any symptoms of hyper/hypoglycemia when she saw him on June 15. Dkt. No. 72, ¶¶26-27. Indeed, had Plaintiff's body required a dose of insulin at that time, he would have appeared ill, experienced a high heart rate, and would have been in distress. *Id*. Progress Notes from that interaction indicate, "[Plaintiff] does not appear diaphoretic [sweaty] and is alert and oriented. Breathing is equal and unlabored." Dkt. No. 73-1 at 1. Based on Nurse Pach's assessment of Plaintiff, including his ability to yell, kick, and scream at staff to make his needs known, she did not believe that he was hyper/hypoglycemic or required insulin. Dkt. No. 72, ¶27. Plaintiff claims that Nurse Pach "never

2

saw me at all on 6-15-22," *see* Dkt. No. 76, ¶3, but contemporaneously created medical records clearly show otherwise, *see* Dkt. No, 73-1 at 1.

The following day, on June 16, 2022, Nurse Pach went back to Plaintiff's cell at around 6:45 a.m. to conduct a blood sugar test and to give him his dose of insulin regular, if needed. Dkt. No. 72, ¶29. To conduct a blood sugar test, Nurse Pach needed to prick Plaintiff's finger with a needle and place the blood on an "Accu-Check" test strip that would show blood sugar levels within a few seconds. *Id*., ¶11. Plaintiff was also on a "restrained-for-medication" restriction at the time due to his documented history of physically aggressive behavior towards nurses, so he needed to be tethered to the door before being pricked with a needle. *Id*., ¶¶18, 19, 30, 49, 52, & 68. Rather than complying with a tether, Plaintiff started yelling at Nurse Pach for her failure to immediately pull him out of his cell when he complained about chest pains the day before. *Id*., ¶¶29-31.

According to DOC policy, a refusal to comply with a security measure needed to administer medication is considered a refusal of the medication itself. *Id*., ¶¶17 & 20. Nurse Pach explains that inmates have a right to refuse medication and it is considered unethical for medical staff to use force (such as a tether) to force an inmate to take medication. *Id*., ¶¶15 & 43. This is why DOC policy requires voluntary compliance with security measures needed to administer medication. *Id*. A refusal to comply with a blood sugar test is also considered a refusal of medication as well, though the bigger issue with the failure to conduct a blood sugar test is the health risk associated with a patient possibly receiving the wrong dose of insulin. *Id*., ¶¶16, 20, 72, & 73. The dose of insulin regular a patient receives depends on blood sugar test results and sometimes insulin may not be necessary at all, if blood sugar levels are within the normal range. *Id*., ¶¶12, 72, & 73. Without a blood sugar test, a patient cannot safely receive a dose of insulin

3

regular because the dose could be inaccurate and could separately cause hyper/hypoglycemia. *Id*., ¶¶13 & 72.

Plaintiff refused to be tethered, so Nurse Pach was not able to conduct a blood sugar test during her 6:45 a.m. interaction with Plaintiff on June 16. *Id*., ¶31. Plaintiff's conduct was considered a refusal of medication because Nurse Pach could not determine if insulin regular was required, and if so, in what dose. *Id*. Progress Notes from that interaction indicate that Plaintiff appeared normal and not in any distress (apart from yelling at staff); and he was also alert and oriented, breathing normally, not sweaty, and did not exhibit any symptoms of hyper/hypoglycemia. *Id*., ¶32; *see also* Dkt. No. 73-1 at 1. Based on Nurse Pach's assessment of Plaintiff, she did not believe that a dose of insulin regular was medically required at that time. Dkt. No. 72, ¶32.

Nurse Pach attempted to give Plaintiff his insulin four more times that day. *Id*., ¶¶33-40. At 7:19 a.m., Plaintiff was offered insulin glargine, along with a Clonidine patch, but he refused both. *Id*., ¶33. At 9:10 a.m., Plaintiff was again offered but refused his insulin glargine. *Id*. Plaintiff claims that he did not see Nurse Pach at 9:10 a.m. that day, *see* Dkt. No. 76, ¶4, but again contemporaneous medical records show otherwise, *see* Dkt. No, 73-1 at 10. Progress Notes from his 9:10 a.m. interaction with Nurse Pach indicate that he was being "argumentative" and refused to cooperate. Dkt. No. 72, ¶33; *see also* Dkt. No. 73-1 at 11. At 10:38 a.m., then again at 3:45 p.m., Plaintiff was again offered but refused his insulin regular. Dkt. No. 72, ¶¶39-40.

Plaintiff also had a "sick call" visit with Nurse Pach on June 16 in connection with his complaints of chest pain from the day before. Dkt. No. 72, ¶¶34-38. During the visit, which occurred at 9:30 a.m., Plaintiff complained that his insulin was not brought to him that morning and he had not yet eaten that day. *Id*., ¶¶36 &. Nurse Pach reminded Plaintiff that she had offered

4

him the medication to which he responded: "sorry ain't going to get it but a lawsuit will. That's what I am going to do." *Id*. Upon her attempt to examine Plaintiff's chest, the purpose of the sick call, Plaintiff refused to further speak with Nurse Pach or answer her questions. *Id*. Nurse Pach did not have any further interactions with Plaintiff that day and she did not observe Plaintiff exhibiting any signs of hyper/hypoglycemia. *Id*., ¶¶41 &44. Nurse Pach notes that Plaintiff's ability to yell, kick, and scream at staff to make his needs known demonstrated that he was not hyper/hypoglycemic from the failure to receive certain doses of insulin on June 15 and June 16. *Id*., ¶45.

Nurse Hosfelt interacted with Plaintiff on August 5, 2022. *Id*., ¶¶50-51. She went to his cell at around 11:00 a.m. to conduct a blood sugar test for his dose of insulin regular, but he refused the blood sugar test. *Id*. At 4:30 p.m., Nurse Hosfelt went back to his cell to conduct a blood sugar test, but he again refused. *Id*., ¶56. Plaintiff maintains that Nurse Hosfelt did not give him insulin regular during those interactions because, "I was calling her names," but does not dispute denying the blood sugar tests. Dkt. No. 76, ¶6. At 7:30 p.m., Nurse Hosfelt went back to his cell a third time to conduct a blood sugar test, where he was lying on the floor. Dkt. No. 72, ¶57. At the time, Plaintiff was also on a "back of cell" restriction (in addition to the "restrained for medication" restriction) due to history of abusive behavior with nurses, which meant that he had to be at the back of his cell when staff was present at his cell door. *Id*., ¶¶18, 19, 30, 49, 52, & 68. Rather than staying at the back of his cell, Plaintiff stated that he wanted his medication, and he stood up and walked to his cell door. *Id*., ¶57. A correctional officer opened the trap door, but Plaintiff decided to spit out of the trap and said to Nurse Hosfelt, "you stanky bitch." *Id*. Plaintiff's saliva landed on Nurse Hosfelt's pants, so she left the cell to clean herself as saliva can spread diseases such as tuberculosis, hepatitis, and viral meningitis. *Id*., ¶¶58-59. This incident was considered a

5

refusal of medication because Plaintiff failed to comply with a security restriction needed to administer his medication and he spit at staff, creating an additional health risk to staff. *Id*., ¶¶60-61. Nurse Hosfelt explains that she was not concerned with Plaintiff missing his insulin regular when she saw him on August 5 because there were no signs of hyper/hypoglycemia, and he did not complain about any medical needs during that interaction. *Id*., ¶¶63-65. Plaintiff did not appear ill, in distress, sweaty, or experiencing a high heart rate. *Id*., ¶63. To the contrary, Plaintiff was alert and oriented, was at his physical and cognitive baseline, showed strength when he stood up from the floor and walked to the door, and was agile enough to bend down to the trap door and spit out of it. *Id*., ¶65.

Nurse Hosfelt again interacted with Plaintiff on September 14, 2022. *Id*., ¶67. By that point in time, Plaintiff had an official "spit mask" restriction, which meant he had to wear a spit mask while staff were present at his cell door. *Id*., ¶68. At 7:17 a.m., Plaintiff agreed to take his insulin glargine and Metformin; and he later also agreed to take his insulin regular at 7:42 a.m. *Id*., ¶69. At 10:37 a.m., Plaintiff was offered but refused his insulin regular. *Id*., ¶70. At around 4:30 p.m., Plaintiff was again offered but refused both his blood sugar check and insulin regular. *Id*., ¶71. Plaintiff concedes that "there is no incident that occurred on 9-14-22." Dkt. No. 76, ¶7.

Both Nurse Pach and Nurse Hosfelt interacted with Plaintiff on September 30, 2022. *Id*., ¶¶76-83. At around 7:00 a.m., he agreed to take his metformin, insulin regular, and insulin glargine. *Id*., ¶77. These medications were administered by Nurse Pach. *Id*. At approximately 10:46 a.m., Nurse Hosfelt went to his cell for blood sugar testing, which he initially said he wanted to do. *Id*., ¶79. Plaintiff refused to put on his spit-mask, however, and argued with Nurse Hosfelt and security staff. *Id*. Due to Plaintiff's prior incidents of spitting, Nurse Hosfelt told Plaintiff that, if he did not comply with security requirements, it would be considered a medication refusal.

6

*Id*., ¶80. Plaintiff responded, "fuck you, you stanky bitch." *Id*. This incident was considered a medication refusal and Nurse Hosfelt left. *Id*. According to Plaintiff, he no longer had the spit-mask that he "refused to give back yesterday" because he had "destroyed it." *See* Dkt. No. 76, ¶¶7 &8; *see also* Dkt. No. 77, ¶8. He offered to wear his Covid mask, which staff said was not adequate to comply with health/security needs. Dkt. No. 77, ¶8. At 4:30 p.m., Nurse Hosfelt offered Plaintiff Metformin, along with a blood sugar test for insulin regular, but he refused both. Dkt. No. 72, ¶82. Nurse Hosfelt was not concerned with Plaintiff missing his insulin regular when she interacted with him on September 30 because he was alert and oriented, there were no signs of hyper/hypoglycemia, and he was able to effectively communicate to refuse medication. *Id*., ¶83. Nurse Hosfelt states that she offered Plaintiff his insulin during her shifts on August 5, September 14, and September 30, but she ethically could not force him to take it. *Id*., ¶84. She states that his failure to receive medication were the results of his own actions and refusals to comply with security measures and blood sugar testing required to safely administer the medication. *Id*., ¶85.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932,

7

937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Defendants contend that they are entitled to summary judgment because the denial of Plaintiff's insulin was a result of his own refusals to take the medication, not their deliberate indifference towards his medical needs. Dkt. Nos. 71 & 79. Defendants argue that they timely offered blood sugar testing/medication each time it was due, but for different reasons on different days, Plaintiff refused. *Id*. Defendants point out that Plaintiff did not properly respond to their proposed findings of fact, as required by Civil Local Rule 56(b)(2)(B)-(C), and the Court additionally notes that the limited number of facts Plaintiff did attempt to dispute (improperly) through his declaration/response brief are clearly contradicted by contemporaneous medical records. *Compare* Dkt. Nos. 76 & 77 *with* Dkt. No. 73-1. For these reasons, and the ones explained below, the Court will grant Defendants' motion for summary judgment and will dismiss the case.

To survive summary judgment on an Eighth Amendment deliberate indifference claim, Plaintiff must provide evidence from which a reasonable jury could conclude that: (1) he faced an objectively serious medical condition; and (2) the defendants subjectively knew about the medical condition and disregarded it. *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750, 751 (7th Cir. 2011)). The first, objective, element is satisfied by showing that Plaintiff suffered from a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for

8

a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citing *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). The second, subjective, element is satisfied by showing that a prison official "knows of a substantial risk of harm to an inmate and 'either acts or fails to act in disregard of that risk.'" *Gomez*, 680 F.3d at 865 (quoting *Arnett*, 658 F.3d at 750). This is a "high hurdle." *See Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012). It requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Id*. (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). Plaintiff must show that Defendants' decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)).

With respect to the first prong, Defendants do not appear to dispute that Plaintiff had an objectively serious medical condition on the days in dispute; therefore, the Court will assume for purposes of summary judgment that Plaintiff satisfied this element.[1]

With respect to the second prong, the undisputed record establishes that Defendants offered blood sugar tests/medication at the appropriate times during their shifts, but Plaintiff's own actions

---

[1] The Court notes that it seems unclear at best if Plaintiff was suffering an objectively serious risk of harm at the times Defendants interacted with him on June 15, June 16, August 5, September 14, and September 30. *See e.g., Waldrop v. Wexford Health Sources, Inc*., 646 F. App'x 486, 490 (7th Cir. 2016). Indeed, Plaintiff's prescription for insulin regular was not medically mandated three times a day, as he had alleged in his original complaint. Instead, this medication was only required if his blood sugar test results at mealtimes showed he was hyper/hypoglycemic and in need of an extra dose of insulin. The summary judgment record contains no evidence showing that Plaintiff was unwell and/or requiring an extra dose of insulin during the times in dispute. Plaintiff refused the blood sugar tests that would have unequivocally established the need for insulin. Contemporaneous medical records establish he was alert and oriented, breathing normally, not sweaty, and did not exhibit any symptoms of hyper/hypoglycemia when Defendants interacted with him. And neither the sworn complaint nor Plaintiff's declaration/response brief provide any specific details disputing Defendants' evidence that he was healthy on those days. *See Waldrop*, 646 F. App'x at 491 (Plaintiff adequately alleged harm when he stated that he suffered "insatiable thirst, frequent urination, elevated blood pressure, and vomiting such that he had to be administered an emergency dose of insulin and admitted to the infirmary for several days."). Plaintiff's claims seem to be based on the fact that he failed to receive medication that may not have even been necessary in the first place.

9

prevented him from receiving his insulin. Indeed, the evidence shows that Plaintiff either refused the medication itself or he refused security measures and/or blood sugar tests needed to administer the medication. On June 16, Plaintiff refused to comply with a tether needed to complete a blood sugar test during Nurse Pach's shift. He also refused his long-lasting dose of insulin twice that day. On August 5, he refused two blood sugar tests, along with a back of cell restriction needed to complete a third blood sugar test, during Nurse Hosfelt's shift. Plaintiff concedes there was no incident on September 14. *See* Dkt. No. 76, ¶7. And, on September 30, Plaintiff refused one blood sugar test, along with a spit-mask restriction needed to complete a second blood sugar test, during Nurse Hosfelt's shift. Defendants explain that they cannot safely administer insulin regular without an Accu-Check test showing the appropriate dose; and giving the wrong dose of insulin regular is harmful to patients as it might separately cause hyper/hypoglycemia. Defendants additionally explain that DOC policy requires voluntary compliance with security measures needed to administer medication. This policy makes sense given that inmates have a right to refuse medication and it would be unethical to use force to make an inmate take medication. The Court also notes that neither Plaintiff's sworn complaint nor declaration/response brief provide any specific details about any harm he allegedly suffered from the failure to receive his insulin regular on those days. *See e.g., Waldrop v. Wexford Health Sources, Inc.,* 646 F. App'x 486, 490 (7th Cir. 2016) (noting that Plaintiff had no Eighth Amendment claim against the nurse who denied him insulin based on his refusal of an Accu–Check test because he did not submit any evidence of harm from the incident; and to the contrary, evidence submitted by defendants showed that receiving an extra dose of insulin when blood sugar levels are unknown could be fatal).

With respect to the June 15 incident, Nurse Pach explains that Plaintiff did not complain to her about the failure to receive insulin regular earlier in the day, and he did not appear to need

10

medication when she saw him at 5:45 p.m. anyway. He had just eaten food, which would have stabilized his blood sugar levels, and he did not exhibit any symptoms of hyper/hypoglycemia such as elevated heart rate, labored breathing, excessive sweating, or distress. With respect to this incident, Nurse Pach used her medical judgment to conclude that no further medical care was needed at the time she saw him. Based on this record, no reasonable jury could conclude that Defendants were deliberately indifferent towards Plaintiff's medical needs on June 15, June 16, August 5, September 14, and September 30.

In response, Plaintiff states that Nurse Pach did not see him at all on June 15 or on June 16 at 9:10 a.m. But contemporaneous medical records show otherwise. *See* Dkt. No. 73-1 at 1 & 11. Plaintiff maintains that Nurse Hosfelt did not give him insulin regular on August 5 because, "I was calling her names," but he does not dispute denying the blood sugar tests required to safely administer the medication. Dkt. No. 76, ¶6. Plaintiff states that staff told him to wear his spit-mask on September 30, but he could not comply because he had already "destroyed" the one provided to him the day before. *See* Dkt. No. 76, ¶¶7 &8; *see also* Dkt. No. 77, ¶8. However, Plaintiff's argument only strengthens Defendants position that his own actions prevented him from receiving his medication; and Plaintiff did not complain about any medical issues during that interaction anyway. Plaintiff generally notes that Defendants "have nothing to substantiate" many of their factual assertions. *See* Dkt. No. 76, ¶4. But the Court has reviewed Plaintiff's medical records in detail, and Defendants' proposed facts are supported by evidence, *see* Dkt. No. 73-1. Finally, Plaintiff attempts to raise a new incident that allegedly occurred on September 5 and September 6, *see* Dkt. No. 77, ¶¶ 4-7, but the Court will not allow Plaintiff to assert new facts and claims at summary judgment because it unfairly prejudices Defendants, who did not get an opportunity to test the veracity of the allegations through discovery. *See Schmees v. HC1.COM,*

11

*Inc.*, 77 F.4th 483, 490 (7th Cir. 2023) (noting that "[i]t will rarely be appropriate" to treat new claims presented for the first time in summary judgment briefing as a constructive motion to amend."). Based on the record, no reasonable jury could conclude that Defendants were deliberately indifferent towards Plaintiff's medical needs on June 15, June 16, August 5, September 14, and September 30. Therefore, the Court will grant Defendants' motion for summary judgment and dismiss the case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 70) is **GRANTED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 26th day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge